**DUBOIS DUTCH, LLC**

v.

**SANDY TOWNSHIP BOARD OF SUPERVISORS and John A. Guido**

**Appeal of: John A. Guido.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2007.
Decided Dec. 28, 2007.
Reargument Denied Feb. 13, 2008.

See also 584 Pa. 93, 880 A.2d 1220.

Anthony S. Guido, Dubois, for appellant.

Toni M. Cherry, Dubois, for appellee.

BEFORE: COLINS, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COLINS.

John A. Guido appeals an order of the Court of Common Pleas of Clearfield County that reversed an order of the Sandy Township Board of Supervisors and granted a request filed by Dubois Dutch seeking (1) a modification of a requirement of the Township's subdivision ordinance (SALDO) and (2) subdivision approval for a tract of land in the township.[1]

This case presents a long and tortured history, which we will recite below. In 1982 Philip and Sherry Dieringer owned a 3.379–acre tract of land in the Township, hereinafter referred to as the Property. In that year, the Dieringers informally separated the tract into two parcels by virtue of a lease between the Dieringers and Harley Hotels. The lease granted to Harley Hotels the use of a 2.605–acre portion of the Property upon which Harley Hotels operated a Dutch Pantry restaurant. The lease also contained a purchase option entitling the lessee to purchase the Dutch Pantry tract. On the remaining

1. Because the Board of Supervisors made no record of the proceedings before it, the trial court conducted a de novo review and accepted evidence offered only by Dubois Dutch.

.772–acre parcel, the Dieringers operated a gas station and convenience store. Guido purchased the Property in 1986 for $110,000. The agreement of sale included a provision entitling Guido to receive payment of $30,000 upon the exercise of the lease option by the lessee of the restaurant parcel. At the time the Dieringers entered the lease with Harley Hotels, and continuing after their sale of the Property to Guido, the Township's 1964 zoning ordinance remained applicable to the approved uses in the C–H Commercial–Highway District in which the Property is located. During this period, both parcels comprising the Property satisfied the minimum lot size requirements of the ordinance. However, in 1996, the Township adopted a new zoning ordinance that changed the minimum lot sizes for this district to 45,000 square feet. Consequently, the smaller of the informally separated lots, being only 33,259 square feet in size, did not conform to the 1996 zoning ordinance.

In 1998 Dubois Dutch purchased the Dutch Pantry restaurant from Harley Hotels, and succeeded the latter as lessee in the lease agreement with Guido. Dubois Dutch attempted to exercise its purchase option in November 1998, before the expiration of the lease. Guido refused to convey the parcel for the espoused reason that he would not be able to continue his commercial use of the smaller remaining parcel under the new minimum size requirements of the ordinance. Dubois Dutch approached the Township's Planning Commission seeking formal subdivision of the Property in accordance with the lease terms. The Commission rejected the request.

Dubois Dutch then filed a specific performance action in the Court of Common Pleas of Clearfield County, seeking an order compelling Guido to complete the transfer of the property. In response, Guido contended that he could not comply with such a request because that action would violate the zoning ordinance. Guido contemporaneously filed an ejectment action against Dubois Dutch. In response to these pending matters, the trial court (1) directed Dubois Dutch to file a second request for subdivision approval with the Township, and (2) stayed all matters until the Township Planning Commission resolved the request for subdivision approval.

When Dubois Dutch submitted its renewed application with the Commission for subdivision approval, it asserted that formal sanction of the division was proper either because the 1982 lease option effectuated a subdivision of the property at the time the lease was signed, or that the exercise of the option resulted in an ownership of the land relating back to the 1982 lease execution. With the latter reasoning, Dubois Dutch suggested that the former zoning ordinance would apply, based on the relation-back theory such as would render the smaller residue lot a lawful nonconforming lot and use.

The Planning Commission approved Dubois Dutch's request, and Guido appealed to the Common Pleas Court. That Court, following a de novo hearing, affirmed the Commission's grant of subdivision approval, concluding (1) that the execution of the lease and Dubois Dutch's attempt to exercise the option effectuated a subdivision under the Pennsylvania Municipalities Planning Code (MPC)[2] and the previous zoning ordinance, and (2) that the smaller lot and its use as a gas station, constituted a permissible pre-existing non-conforming lot under the 1996 zoning ordinance. Guido appealed that decision to this Court, which reversed the trial court based upon

2. Act of July 31, 1968, P.L. 805, as amended,    53 P.S. §§ 10101–11202.

its conclusion that the leasehold and option to purchase did not effect a subdivision of the property under the MPC or the previous ordinance and hence, the smaller lot could not constitute a pre-existing nonconforming lot upon Dubois Dutch's exercise of the option.

Dubois Dutch appealed this Court's decision to the Supreme Court, which limited the focus of the appeal to the question of "whether a leasehold interest in a parcel of land coupled with an option to purchase such land creates a property interest in the lessee-optionee sufficient to support a legally recognized subdivision of the property either at the time the lease and option were simultaneously executed or when the purchase option was exercised." *Guido v. Township of Sandy*, 584 Pa. 93, 95, 880 A.2d 1220, 1221 (2005).

In resolving this issue, the Supreme Court first quoted its decision in *Detwiler v. Capone*, 357 Pa. 495, 55 A.2d 380, 383 (1947), wherein that Court equated purchase options in leases to contracts for the sale of land, both of which constitute encumbrances on the land. When two parties enter a lease with an option to purchase, upon execution of the option, the courts regard the title (and ownership) as relating back to the date the lessor/optionor granted the option. In reliance upon *Detwiler*, our Supreme Court also noted that when a lessee/optionee verbally communicates to the lessor/optionor his or her intent to exercise the option, the lessor/lessee relationship terminates and that communication transforms the lease into a contract for sale. In summary, the Court concluded that "Dubois Dutch's equitable title reverted, upon exercise of the Option, back to the date of formation of the 1982 Lease and Option conferring title upon Dubois Dutch effective June 16, 1982." *Guido*, 584 Pa. at 102, 880 A.2d at 1225.

After setting forth this well-accepted tenet, the Supreme Court, while agreeing that the potential right to exercise an option does not create a division in fact of a parcel, stated that the exercise of such an option does create a division-in-fact that relates back to the date of the agreement. However, as the Supreme Court noted, division-in-fact is a concept distinct from legal subdivision, i.e., one that is accomplished under a subdivision ordinance, and the exercise of the option could not, the Supreme Court opined, result in a legal subdivision.

The Supreme Court, citing the MPC, noted the manner in which compliance with a formal subdivision process furthers the goals of "protecting and promoting the safety and health of the public, accomplishing coordinated development, guiding the uses of land and structure, and preserving the Commonwealth natural resources. 53 P.S. § 10105." 584 Pa. at 106, 880 A.2d at 1227. The Court reflected upon the observation that, had Dubois Dutch's predecessor in interest acted in a timely manner to exercise its option, the earlier subdivision ordinance would have applied, resulting in a division of the property that created two lots of sufficient size to satisfy the minimum lot size requirements of the earlier ordinance.

The Supreme Court then noted that the MPC and the Township's 1997 subdivision ordinance both contain "modification" provisions permitting property owners to seek relief from the application of a subdivision ordinance. Under Section 512.1 of the MPC, 53 P.S. § 10512.1, the governing body or planning commission (as the case may be)

> may grant a modification of the requirements of one or more provisions [of the subdivision ordinance] if the literal enforcement will exact undue hardship because of peculiar conditions pertaining

to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

Finally, the Supreme Court agreed with this Court's conclusion that Dubois Dutch's request of the Planning Commission to designate the property as a pre-existing non-conforming use did not constitute a tacit request for modification, but noted that the parties could seek subdivision approval under the modification provision and also proceed to complete litigation of Dubois Dutch's specific performance claim.

Following this opinion, Dubois Dutch filed a written request with the Township's Planning Commission for subdivision approval under the ordinance modification provision of the minimum lot size requirements based upon the division of the property that occurred, and related back to, the 1982 purchase-option agreement. Guido objected to Dubois Dutch's request, and also submitted his own request for subdivision approval—one that he based upon a reconfiguration of the property lines. Guido's proposed subdivision required the taking of some of the property to which Dubois Dutch was entitled under the lease-option, thereby enlarging Guido's remaining tract. On November 21, 2005, the Planning Commission denied Dubois Dutch's request and granted Guido's. Dubois Dutch appealed those decisions to the trial court, and Guido intervened in Dubois Dutch's appeal.

The trial court conducted a de novo review of the Planning Commission's decision. At that hearing, Guido presented no evidence. The trial court reversed the Planning Commission's decisions by: (1) granting Dubois Dutch's request for modification and subdivision request, and waiving the minimum lot size requirements; (2) denying Guido's subdivision request; and (3) directing that Dubois Dutch's subdivi-

sion plan be filed of record and that Guido's recorded subdivision plan be voided and stricken from the Clearfield County records. Guido filed an appeal of the trial court's decision that the Court now considers.

■ With regard to the trial court's grant of the modification request by Dubois Dutch, Guido raises three issues: (1) whether the trial court had subject matter jurisdiction to modify the minimum lot size requirements through the subdivision modification request; (2) whether the trial court erred in granting the request by failing to address the specific requirements of the modification provision; and (3) whether the trial court erred in not applying the doctrine of res judicata to preclude Dubois Dutch from initiating the modification request. Because the trial court did not address the res judicata issue, and because it could be dispositive, we will first address this issue.

■ Res judicata will preclude a court from considering a second identical application for relief, i.e. a variance. In order to apply, a litigant must establish the identity of four elements in the matter for which the relief is sought:

(1) Identity of the thing sued for;

(2) Identity of the cause of action;

(3) Identity of persons and parties to the action; and

(4) Identity of the quality in the persons for or against whom the claim is made.

*City of Pittsburgh v. Zoning Board of Adjustment of the City of Pittsburgh*, 522 Pa. 44, 559 A.2d 896 (1989). However, in zoning matters, courts apply the rule sparingly, perceiving the need for flexibility in land use matters to outweigh the burdens of repetitive litigation. *Price v. Bensalem Township Zoning Hearing Board*, 131 Pa. Cmwlth. 200, 569 A.2d 1030, 1032 (1990). In *Price*, the Court also noted that res

judicata will not bar a subsequent application when changes associated with the land itself are evident. The Court in *Price* concluded that, although an earlier application for a variance was res judicata as to a subsequent variance request, the doctrine did not bar a subsequent claim that the property was validly nonconforming as to the ordinance, even though the relief sought was the same.

Essentially, Guido argues that Dubois Dutch had the opportunity in the initial application for subdivision to include an alternative request for modification with that first request. Guido is correct in pointing out that Dubois Dutch initially filed for subdivision approval under the relation-back theory, which occurred in 1982 and Dubois Dutch argued only that this meant that the ordinance provisions applicable at that time were also binding. Dubois Dutch elected to submit a formal written application under the modification provision only after the Supreme Court confirmed that the 1997 ordinance applied. However, as in *Price*, although Dubois Dutch sought essentially the same relief, the manner of obtaining the relief, i.e., formal subdivision, arose under different forms of application. Although this is an admittedly close case, given the fact that there have been no material alterations to the land itself, we are inclined to conclude that the doctrine of res judicata does not apply under the present circumstances.

As to the remaining issues, which the trial court did address, we believe that the Honorable Fredric J. Ammerman of the Court of Common Pleas of Clearfield County ably and correctly resolved those questions. Accordingly, we will affirm the trial court on the basis of his well-reasoned decision.

### ORDER

AND NOW, this 28th day of December 2007, the order of the Court of Common Pleas of Clearfield County is affirmed on the basis of the opinion of Judge Fredric J. Ammerman at No. 05–1983–CD, —— Pa. D. & C.4th ——, filed February 23, 2007.